UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| REVEREND LISA MARIE MURRAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 4:11-cv-42- SEB-TAB |
| vs. ) | |
| ) | |
| CURTIS M. CARLSON, ) | |
| ) | |
| Defendant. ) | |

## ORDER OF DISMISSAL

Plaintiff's counsel, J. Allen Johnson, has tested the Court's patience many times. We have warned him on at least five occasions that his continued disregard of the federal and local rules of procedure and the Court's orders was a dangerous course and could result in the dismissal of this case.[1] We have now reached the point where dismissal is necessary. For the reasons explained below, Plaintiff's remaining claims in this action are hereby dismissed with prejudice, pursuant to Fed. R. Civ. P. 41(b) as well as the Court's inherent authority to manage and control its docket and the litigation pending before it. Williams v. Chicago Bd. of Educ., 155 F.3d 853, 857 (7th Cir. 1998) ("District courts inherently possess the authority to dismiss a case *sua sponte* for want of prosecution.")

### A. BACKGROUND

On April 17, 2009, Defendant Curtis M. Carlson, who was Plaintiff's lawful husband at the time, filed an Application for Emergency Detention of Mentally Ill and Dangerous Person with the Clark Circuit Court seeking a warrant for his wife's arrest and transport to the Behavior Health

---

[1] Our five prior orders warning Attorney Johnson that the case was subject to dismissal can be found at Docket Nos. 14, 22, 34, 65, and 67. All of these prior orders are incorporated herein by reference.

Center of Clark Memorial Hospital (Behavioral Health Center) for treatment and observation. [Dkt. 27-3.]   That same day, the Clark Circuit Court issued the requested warrant.  Id.  Hours later, Carlson's wife, Plaintiff herein, was taken into custody by officers with the Clark County Sheriff's Department and transported to the Behavior Health Center.  [Dkt. 32 at ¶ 3.]   Two years later, she filed this lawsuit.

## B.  STANDARD OF REVIEW

A dismissal for the want of prosecution under Rule 41(b) "is an extraordinarily harsh sanction that should be used only when there is a clear record of delay or contumacious conduct, or where less drastic sanctions have proven unavailing." Kasalo v. Harris & Harris, Ltd., 656 F.3d 557, 561 (7th Cir. 2011). Whether such a dismissal is appropriate depends on the circumstances of the case, including the frequency and egregiousness of the plaintiff's failures, the effect of the mistakes on the court, the prejudice resulting to the defendant, the probable merits of the suit, whether the responsibility for mistakes is attributable to the plaintiff herself or to the plaintiff's lawyer, and the consequences of dismissal for the social objectives of the type of litigation that the suit represents. Id.

## C.  DISCUSSION

### 1.  The frequency and egregiousness of Plaintiff's failures

The case was filed on April 14, 2011 by Plaintiff, appearing *pro se*, and got off to an incredibly slow start.  After we ordered Plaintiff to supplement her complaint on or before February 21, 2012, she employed Attorney Johnson to represent her.  Following his appearance, however, Attorney Johnson experienced a series of family issues, health crises,[2] and a variety of difficulties

---

[2]   As we explained in our ruling at Docket No. 67, we are not unsympathetic to lawyers with bona fide health crises.  However, attorneys with chronic health issues are still required to

complying with the federal and local rules of procedure (more about that below). As a result, Plaintiff did not file a proper amended complaint until October 3, 2012 – a date nearly eight (8) months after the Court's originally imposed deadline of February 21, 2012 and eighteen (18) months after this case was first initiated.[3] Thereafter, Plaintiff delayed another six (6) months before perfecting service on the defendants – doing so only after the Court warned her *for the third time* that any further delays in serving the defendants would likely result in the dismissal of her case. [Dkt. Nos. 14, 22 & 34.] Even then, Plaintiff did not file the proof of service required by Fed. R. Civ. P. 4(l) – completely ignoring our directive that such proof be filed.[4] [Dkt. No. 34 (requiring Plaintiff to file her proof of service by April 30, 2012).]

Once served, four of the five defendants promptly filed Rule 12(b)(6) motions. Plaintiff did not respond to any of those motions within the time limits set by our local rules. Her claims against those four defendants were thus dismissed, leaving Curtis M. Carlson as the sole remaining defendant.[5] [Dkt No. 56 (dismissing Dale Carlson) & Dkt. No. 65 (dismissing Julia C. Catone, the Clark County Sheriff's Department, and the Behavioral Health Center).]

---

meet their professional obligations. [See Dkt. No. 67 at n.4).]

[3] Plaintiff attempted to file an amended complaint on June 15, 2012, but her filing did not comply with Local Rule 15-1(b). That rule proscribes amendments to pleadings by interlineation or by reference to another document. Plaintiff's June 15, 2012 filing was not a complete document in that it would have had the Court look to her original complaint filed on April 14, 2011 for some of her claims and then to her June 15, 2012 amended complaint for the remainder of her claims. [See Dkt. Nos. 27 & 31.]

[4] We infer from the activity in this case that Plaintiff did evidently perfect service on the defendants because, by the early part of May in 2013, all of the defendants had appeared and answered.

[5] Mr. Carlson has appeared and is proceeding *pro se*.

Exacerbating the Plaintiff's dilatoriness is her failure in virtually every filing made in this case to comply with the federal and local rules of procedure. We have admonished Plaintiff to correct her errors on multiple occasions. The Clerk's staff and the Courtroom Deputy have contacted Attorney Johnson numerous times by both email and telephone, to alert him to his various filing errors and to instruct him on how to avoid such errors in the future. The Court itself has issued no fewer than seven (7) orders and entries addressing his rule violations, procedural errors, missed deadlines, etc. [See Dkt. Nos. 13 (counsel's failure to register for electronic filing and failure to tender proposed order as required by Local Rule 7-1(d)); Dkt. No. 14 (counsel's continued failure to register for electronic filing, failure to perfect service on defendants as required by Fed. R. Civ. P. 4(m), and failure to comply with prior court orders); Dkt. No. 22 (counsel's continued failure to comply with prior court orders, continued failure to perfect service on defendants as required by Fed. R. Civ. P. 4(m), and failure to ratify a motion admittedly filed by counsel's secretary without counsel's knowledge); Dkt. Nos. 27, 31 , 32, 33 & 34 (counsel's failure to tender the entire proposed amended pleading as required by Local Rule 15-1(b) and failure to sign amended complaint as required by Rule 11); Dkt. No. 34 (counsel's continued failure to perfect service on defendants as required by Fed. R. Civ. P. 4(m) and improper fax filing); Dkt. No. 67 (recounting a plethora of problems); Dkt. No. 68 (counsel's failure to file documents electronically as required by Local Rule 5-2 and failure to redact personal information as required by Fed. R. Civ. P. 5.2(a)); Dkt No. 69 (unsigned affidavit in violation of Local Rule 5-7(c)); and Dkt. No. 71 (incorrect certificate of service and failure to make service by on *pro se* defendant in accordance with Fed. R. Civ. P. 5).]

While routinely grant forbearances to *pro se* litigants who have repeated difficulties complying with the federal and local rules of procedure, a member of the bar of this Court, such as

Attorney Johnson, is subject to higher standards and expectations. Attorney Johnson's filings have been so poorly constructed that it is often difficult to distinguish them from *pro se* filings. For example, in Plaintiff's filing titled "Response to Court Order to Respond to Propose [sic] Dismissal of Complaint against Curtis Carson/ [sic] and [sic] or Correction to Correct Error," Attorney Johnson states that Defendant Curtis M. Carlson made "milieus false and dis-crematory" attacks against Plaintiff – apparently intending to say that Mr. Carlson made malicious, false and discriminatory attacks against her. [Dkt. No. 69.]

Now, after this frustrating history of delays, procedural errors, missed deadlines, indecipherable language, alleged misunderstandings, and transparent, unconvincing excuses (not to mention the exercise of extreme forbearance by the Court), Plaintiff's Certificate of Service filed on August 14, 2013 at Docket No. 72 is the "final straw." On July 23, 2013, we ordered Plaintiff to show cause why her federal claims against Curtis M. Carlson should not be dismissed, directing her to file her response by August 2, 2013. [Dkt. No. 65.] Plaintiff (again) did not comply with our deadline. Instead, she filed her response *three days late*, on August 5, 2013. [Dkt. No. 69.] In addition, Plaintiff (again) failed to serve her filing on Curtis M. Carlson, requiring the Court to order Attorney Johnson to serve Mr. Carlson with a copy of Plaintiff's response and file an affidavit confirming that he had done so. [Dkt. No. 71.] True to form, Attorney Johnson did not comply with our order, filing instead the Certificate of Service now at issue.

The Certificate of Service displays Attorney Johnson's continuing failure to comply with the applicable federal and local rules. It does not contain a proper caption containing the cause number of this case. It is not signed in accordance with Fed. R. Civ. P. 11, Local Rule 5-7, and ECF Policy 14, and it does not include the statement required by Fed. R. Civ. P. 5(d) and ECF Policy 11 evidencing service on Mr. Carlson. Further, it does not comply with the substance of our August

7, 2013 Order, which required Attorney Johnson to file an *affidavit* verifying service of Plaintiff's response on Mr. Carlson. The Certificate of Service is not itself an affidavit and does not qualify as the equivalent of an affidavit because it is *unsigned and unverified*. Moreover, it does not establish that Mr. Carlson was served. The attached sales receipt indicates that Attorney Johnson paid a Staples office supply store $13.27 to have UPS deliver the papers to Mr. Carlson, but it does not establish that UPS actually delivered the papers to Mr. Carlson.[6]

While Attorney Johnson might view these requirements as technical or insignificant, the Court does not – particularly when they are considered in toto. It is difficult to imagine a more egregious case of attorney inattention and neglect than the situation before us here.

### 2. The effect of the mistakes on the Court

The weight of these failings falls on the Court and its staff who have been required to expend valuable time and limited resources responding to the problems that Attorney Johnson has created.

### 3. The prejudice to the remaining defendant

Plaintiff's repeated failures to serve her filings with the Court on Mr. Carlson has prejudiced him in his ability to defend this case.

### 4. The probable merits of the suit

On July 23, 2013, we alerted Plaintiff to the substantive pleading deficiencies in the way she had fashioned her claims against Mr. Carlson under both 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA), ordering her to show cause why those claims should not immediately be dismissed. [Dkt. No. 65.] In her belated response, Plaintiff stated that Mr. Carlson (from whom she

---

[6] We will not broach the issue of whether UPS delivery is a proper method of service under Fed. R. Civ. P. 5 for a defendant who has not consented to service via UPS. See Audio Enterprises, Inc. v. B&B Loudspeakers, 957 F.2d 406, 409 (7th Cir. 1992) (finding that delivery by Federal Express is not "mail" for purposes of Fed. R. Civ. P. 4).

6

is now divorced) "conspired with the other [now dismissed] defendants to have [her] declared incompetent and a threat to others and herself" and "engageds [sic] the involvement of the Sheriff Officers and hospital to hold [her] in custody against her will." [Dkt. No. 69 at p. 2 - 3.] She reiterated that she is disabled and reasserted her allegation that Mr. Carlson tricked her into marrying him and lied to a state court judge in order to obtain the emergency order for her arrest and detention in a mental health facility – all so that he could obtain her real property. She added that Mr. Carlson had "trashed [her] home and property with extreme amounts of rubbish," run up her cell phone changes, turned her family against her, and mocked her religious beliefs.[7] Id. at 2 - 4.

### a. Plaintiff's § 1983 claim

A private citizen, such as Mr. Carlson, may be liable under 42 U.S.C. § 1983 if it can be shown that he conspired with state actors to deprive a person of his or her civil rights; however, an allegation merely using the term "conspiracy," cannot, absent reference to material facts, survive a motion to dismiss. Tarkowski v. Robert Barlett Realty Co., 644 F.2d 1204, 1207 n.5 (7th Cir. 1980) (quoting Sparks v. Duval County Ranch Co., 604 F.2d 976, 978 (5th Cir. 1979) (en banc). See also, Maniscalco v. Simon, 712 F.3d 1139, 1145 (7th Cir. 2013) (rejecting a conspiracy claim that was "entirely speculative") and Ryan v. Mary Immaculate Queen Center, 188 F.3d 857, 860 (7th Cir. 1999) (the mere allegation of a conspiracy does not satisfy the pleading requirements of Fed. R. Civ. P. 8.) "There must be allegations that the [private and state] defendants . . . directed themselves

---

[7] We note that Plaintiff also asserts that Curtis M. Carlson was fired by his employer after he took Family Medical Leave, that he mocked her when she attempted to console her nephew who was "ashamed of his victim ology [sic] of being raped as a younger person," and that her younger sister "was found dead of a gunshot to the chest." [Dkt. No. 69.] It is unclear how these facts, even if true, would support either a § 1983 or an ADA claim against Mr. Carlson. Such irrelevancies confirm our opinion that Attorney Johnson's work product is no more sophisticated than the average, untrained *pro se* litigant.

toward an unconstitutional action by virtue of a mutual understanding [which allegations] must further be supported by some factual allegations suggesting such a 'meeting of the minds.'" Tarkowski, 644 F.2d at 1206.

Even treating as true Plaintiff's claim that Mr. Carlson sought an emergency court order in bad faith in an effort to have Plaintiff arrested and detained in a mental health facility so that he could obtain title to her property by hoodwinking a state court judge to ignore that Plaintiff was of perfectly sound mind,[8] Plaintiff has failed to allege *any* facts suggesting that the Clark County Sheriff's Department or the Behavioral Health Center were somehow "in" on Mr. Carlson's illegal plan. The fact the Clark County Sheriff's Department and Behavioral Health Center complied with the state court judge's *facially valid order* does not establish that there was any kind of "meeting of the minds" between and among the defendants aimed at violating Plaintiff's federal constitutional rights. Accordingly, we find that Plaintiff's § 1983 claim against Curtis M. Carlson would not survive a motion to dismiss.

### b. Plaintiff's ADA Claim

We also find that Plaintiff's ADA claim would not survive a motion to dismiss. The ADA does not protect disabled persons from any and every wrong that might be done to them. It protects disabled persons from discrimination in the context of employment, public services, public accommodations and telecommunications. Plaintiff's Amended Complaint does not allege that Curtis M. Carlson discriminated against her in any of these contexts.

---

[8] We note that in her Amended Complaint, Plaintiff avers that she has been disabled since 1994 and suffers from a "multitude of mental and physical illnesses that impair her ability to function," including "ADHD, which is a learning disability," "mood disorder, major depressive disorder, and personality disorder." [Dkt. No. 32.] Plaintiff, thus, admits to a having history of mental health problems.

5. Responsibility for the mistakes

Plaintiff selected Attorney Johnson to prosecute this case on her behalf and, having chosen him as her lawyer and empowered him to be her agent, she is bound by his actions. Attorney Johnson's performance is Plaintiff's performance. Johnson v. McBride, 381 F.3d 587, 589 (7th Cir. 2004). [See also Dkt. No. 67 (where we declined to vacate the judgments entered in favor of the now dismissed defendants on the grounds that, in failing to do so, we would unfairly punish Plaintiff for Attorney Johnson's mistakes).]

6. Social consequences of dismissal

Given Attorney Johnson's woefully deficient performance in this case and the fact that Plaintiff's federal claims against Curtis M. Carlson could not survive a motion to dismiss, the social benefit in dismissing this case is clear. Attorneys and their clients must be diligent in litigating their claims in federal court. Because Plaintiff and her attorney have been forewarned on numerous occasions that the consequence of their inattention, neglect and incompetency would be a dismissal of this lawsuit, we feel entirely justified in taking that action at this time.

## D. CONCLUSION

For the above stated reasons, Plaintiff's remaining claims in this action, including her state law claims such as they are, are hereby dismissed with prejudice based on her failure to prosecute, this case. A separate judgment in favor of Curtis M. Carlson shall issue.

IT IS SO ORDERED.

Date: 10/30/2013

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Michael J. Adler
ADLER LAW LLC
michael@adlerlawonline.com

J. Allen Johnson
everybodyrights112@gmail.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP-New Albany
jlowe@k-glaw.com

Christine Marie Riesner
MCNEELY STEPHENSON THOPY & HARROLD
crbond@msth.com

Derrick H. Wilson
MATTOX MATTOX & WILSON
dhw@mattoxwilson.com

CURTIS M. CARLSON
3462 Concetta Way
Sacramento, CA 95821